RECEIVED BY MAIL

JAN 1 6 2026

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MINNESOTA**

---

**AUNDRAE AKEEM ALLISON,**

Plaintiff,

26-cv-399 PAM/SGE

v.

**CITY OF EAGAN, MINNESOTA;**

**CITY OF EAGAN POLICE DEPARTMENT;**

**OFFICER AARON MACHTEMIST,** in his individual and official capacities;

**DETECTIVE LISA FANCHER,** in her individual and official capacities;

**DETECTIVE MARK KRITZECK,** in his individual and official capacities;

**JOHN DOES 1–10,** inclusive, being unknown officers, supervisors, records custodians,

NCIC/database liaisons, and other persons acting under color of state law, whose identities will

be ascertained through discovery;

**KAILEE ELIZABETH ALLISON;**

**STEPHANIE OLSON;**

**MOLLY PETERS;**

**VIVIAN PETERS;** and

**JOHN PETERS,**

Defendants.

Civil Action No. _____

**JURY TRIAL DEMANDED**

SCANNED
JAN 1 6 2026
U.S. DISTRICT COURT MPLS

Original
Complaint

## **COMPLAINT**

*(42 U.S.C. § 1983; Monell Liability; Supplemental State-Law Claims)*

### **I. INTRODUCTION**

**1.** This is a federal civil-rights action seeking civil-rights compensation and immediate injunctive relief for grave and ongoing constitutional violations arising from a deliberate, coordinated, multi-actor scheme involving the misuse of law-enforcement authority, false reporting, judicial deception, jurisdictional manipulation, abuse of legal process, and the continued enforcement of void, vacated, and jurisdictionally barred custody-related orders and warrants, all in open defiance of constitutional limits.

**2.** Defendants—acting willfully, jointly, and in concert, and under color of state law— weaponized the coercive power of the State to extinguish a fit parent's sole legal and physical custody without adjudication, criminalize constitutionally protected parental conduct, orchestrate strategic forum shopping and unilateral interstate relocation, and sever the parent-child relationship for months, all without lawful authority and in conscious disregard of due process.

**3.** As further context relevant to Defendants' conduct, Plaintiff is a Black father, Defendant Kailee Allison is white, and the minor children are interracial. Plaintiff alleges that Defendants' decisions to presume danger, escalate enforcement, and criminalize Plaintiff were influenced by racialized stereotypes and implicit bias against Black fathers, including the tendency to treat a Black father as presumptively "dangerous," "violent," or "unfit" based on accusation and labels rather than evidence, lawful findings, or jurisdiction. As the direct, foreseeable, and intended

consequence of Defendants' conduct, Plaintiff was unlawfully arrested and criminally charged, deprived of liberty and family association, subjected to prolonged parental alienation, and suffered reputational destruction, severe emotional distress, and catastrophic economic harm. Plaintiff's minor children likewise suffered profound and continuing emotional trauma caused by state-enforced separation from a fit parent absent any lawful custody determination.

## **Law-Enforcement Authority and Constitutional Limits**

**4.** It is well-established that, absent a valid court order, law enforcement has no authority whatsoever to determine custody or remove children, as officers may not adjudicate civil family disputes. An on-duty police officer cannot lawfully function as a private enforcer, investigator, or advocate for one parent in a civil custody conflict.

**5.** Law enforcement may remove a child without a warrant or court order only in the narrowest of circumstances, where there is reasonable cause to believe the child faces imminent danger of serious bodily injury or sexual abuse. No such exigent circumstances existed at any time relevant to Defendants' conduct, rendering all law-enforcement intervention unlawful.

**6.** Law enforcement likewise lacks authority to enforce civil custody matters absent a valid, jurisdictionally lawful emergency custody order. In jurisdictions including North Carolina, officers are expressly prohibited from assisting in civil custody enforcement without such authorization, yet Defendants knowingly disregarded these limits.

**7.** Despite these clear constitutional and statutory constraints, Defendants knowingly relied on material falsehoods, omissions, and judicial deception to obtain emergency orders from courts that lacked personal and subject-matter jurisdiction, and then deployed local, state, and federal

law-enforcement agencies as instruments of enforcement to impose custody outcomes that had never been lawfully adjudicated. Plaintiff further alleges that Defendants' escalation decisions were reinforced by racialized characterizations of Plaintiff as "dangerous" or criminal, and by selective crediting of allegations while disregarding dismissals, lack of findings, and jurisdictional rulings favorable to Plaintiff.

## Initiation of the Scheme and Police Misuse

**8.** The coordinated scheme began on September 18, 2025, when Plaintiff dropped his children off at school at approximately 9:25 a.m. EST. When he returned at approximately 1:00 p.m., school staff informed him that Defendant Kailee Allison had removed the children at approximately 10:00 a.m., without Plaintiff's knowledge, consent, or any lawful custody authority.

**9.** Unbeknownst to Plaintiff at that time, Defendant Kailee Allison had filed an ex parte Domestic Violence Protective Order ("DVPO") on September 17, 2025, in Mecklenburg County, North Carolina. Plaintiff was never lawfully served with the order and only discovered its existence when he retrieved documents from the courthouse on September 19, 2025, depriving him of notice and any opportunity to be heard.

**10.** On or about September 26, 2025, Officer Aaron Machtemist, acting under color of law, contacted Plaintiff multiple times regarding a purported "complaint," including sending a text message stating, "call me I have a complaint about you." This contact followed a wellness check during which Vivian Peters falsely characterized Plaintiff as "a dangerous man."

**11.** The alleged "complaint" concerned only Plaintiff's protected speech regarding the children's relocation to Minnesota and involved no criminal conduct whatsoever. Despite Plaintiff's request, the Eagan Police Department later acknowledged that it possessed no record of the purported nine-minute call, evidencing irregular, undocumented, and unlawful police involvement in a civil custody matter. Plaintiff further alleges that the "dangerous man" characterization and the ensuing undocumented police escalation reflect racially disparate treatment and profiling, in which Plaintiff was treated as presumptively criminal without probable cause.

## Forum Shopping, False Filings, and Escalation

**12.** On September 23, 2025, the day before the first scheduled North Carolina hearing, Defendant Kailee Allison—with the knowledge, encouragement, and logistical support of Defendants— petitioned Dakota County, Minnesota, to assume emergency jurisdiction, seeking to delay or preempt adjudication in North Carolina and initiate strategic forum shopping.

**13.** On September 24, 2025, Defendant Kailee Allison filed an Amended Minnesota Order for Protection in which she:

• Falsely listed an expiration date of October 24, 2025;

• Denied involvement in any other active family-court proceedings, thereby concealing the pending North Carolina case (25CV602284-590); and

• Requested confidentiality of her address and phone number, effectively cutting off all contact between Plaintiff and his children.

**14.** That same day, Defendant Kailee Allison failed to appear in person for the North Carolina hearing and instead emailed the court at approximately 11:30 a.m. requesting a continuance to continue jurisdictional maneuvering. Plaintiff appeared pro se, and the North Carolina court continued the matter to October 6, 2025.

**15.** On September 30, 2025, despite North Carolina's undisputed home-state jurisdiction, Dakota County scheduled a Minnesota hearing for November 4, 2025 (19HA-FA-25-548). At this stage, Defendant Kailee Allison escalated allegations to include fabricated threats and false sexual misconduct claims, guided in part by communications with Defendant Stephanie Olson.

**16.** On October 6, 2025, Defendant Kailee Allison again failed to appear in North Carolina. The North Carolina court dismissed the DVPO with prejudice, terminating any lawful basis for emergency jurisdiction or continued custody interference.

**17.** Nevertheless, on October 17, 2025, Plaintiff was served with notice of the Minnesota proceedings, which continued to rely on the same false allegations and jurisdictional defects, despite the North Carolina dismissal and retained home-state authority.

**18.** Between November 4 and November 26, 2025, Defendants Stephanie Olson and members of the Peters family continued to assist Defendant Kailee Allison through:

• Transportation and housing logistics;

• Coordinated communications and messaging;

• Repetition and dissemination of false narratives portraying Plaintiff as violent and dangerous; and

• Efforts to undermine Plaintiff's credibility in legal, professional, and social contexts.

Plaintiff alleges these narratives were reinforced by racialized stereotypes and were used to prompt law-enforcement escalation and adverse credibility determinations against Plaintiff.

**19.** Defendant Stephanie Olson explicitly advised the use of false or exaggerated allegations of violence to "make sure the judge listens," despite the absence of corroborating evidence. These communications were shared among Defendants, demonstrating knowledge, agreement, and active participation in the scheme.

## Unlawful Enforcement, Arrest, and Child Seizure

**20.** After the November 26, 2025 voluntary dismissal with prejudice of all child-related claims in Minnesota—an act that terminated Minnesota's child-custody jurisdiction as a matter of law—Detective Lisa Fancher and the Eagan Police Department nevertheless initiated repeated late-night calls and messages to Plaintiff seeking to "get his side of the story," constituting unwarranted surveillance, intimidation, and investigative harassment. Plaintiff further alleges that this continued targeting after dismissal reflected racially disparate enforcement and a presumption of criminality inconsistent with the absence of jurisdiction and probable cause.

**21.** On December 1, 2025, two Minnesota judges—acting without lawful jurisdiction—issued emergency orders purporting to award Defendant Kailee Allison sole legal and physical custody and directing the children's return to Minnesota through law-enforcement assistance.

**22.** As a direct and foreseeable consequence of those void Minnesota orders, on December 2, 2025, North Carolina District Court Judge Paige McThenia issued a "Warrant Directing Law Enforcement to Take Immediate Physical Custody of Child(ren) Subject to a Child Custody Order," relying entirely on the Minnesota orders.

**23.** Acting pursuant to that warrant, Plaintiff was located and surrounded by more than twenty (20) Charlotte-Mecklenburg Police Department officers at his sister's residence in North Carolina, where Plaintiff was lawfully present and exercising custody of his children. Plaintiff was arrested and charged with kidnapping of a minor, despite the absence of any lawful custody adjudication transferring parental rights. Plaintiff alleges that the intensity of the deployment, the presumption of danger, and the criminal framing of a Black father's parental conduct further reflect racialized enforcement choices unsupported by lawful predicates.

**24.** Plaintiff was jailed for approximately one day as a result of this enforcement action. During his detention, the minor children were held at the residence under law-enforcement control.

**25.** After Plaintiff's arrest, Defendant Kailee Allison and her sister arrived at the residence, at which point the children were escorted by law enforcement to a vehicle and permitted to return to Minnesota, where they have remained continuously since December 4, 2025, the last date Plaintiff has seen or heard from his children.

## **Vacatur, Continued Prosecution, and Ongoing Constitutional Injury**

**26.** On December 22, 2025, a Minnesota judge formally vacated the December 1, 2025 emergency custody orders, confirming that they were entered without lawful jurisdiction. Plaintiff promptly moved to dismiss the felony deprivation-of-parental-rights charge and quash the associated nationwide warrant.

**27.** Despite the same day vacatur, the Dakota County Attorney's Office continued to oppose dismissal of the felony charge and nationwide warrant, affirmatively maintaining Plaintiff's criminalization and restraint of liberty based on orders that no longer existed as a matter of law.

Plaintiff alleges that Defendants' continued insistence on criminal enforcement—despite vacatur—reflects an unconstitutional willingness to treat Plaintiff as a criminal parent rather than a rights-bearing father, consistent with racially disparate credibility and dangerousness determinations.

**28.** On December 4, 2025, Detective Mark Kritzeck prepared a probable-cause statement supporting a felony charge of deprivation of parental rights, knowingly predicated solely on dismissed domestic-violence cases in North Carolina and Minnesota, while omitting material exculpatory facts.

**29.** The purported probable cause criminalized Plaintiff's lawful travel and exercise of parental rights, falsely alleged evasion of law enforcement, and asserted nonexistent judicial findings of domestic violence. The resulting charge and warrant were knowingly approved and pursued by Prosecuting Attorney Caitlyn Prokopowicz. Plaintiff alleges that these actions further reflect selective crediting of allegations over adjudicated outcomes, consistent with racially disparate enforcement and credibility presumptions.

**30.** As a direct result of Defendants coordinated actions, Plaintiff has been forcibly separated from his minor children for more than 112 days and counting, with all contact blocked, communication ignored, phone access terminated, and the children's current whereabouts concealed. Plaintiff has been denied contact during his son's fifth birthday, Christmas Eve, Christmas Day, New Year's Eve, and New Year's Day.

**31.** This continued enforcement constitutes a continuing and compounding violation of Plaintiff's Fourteenth Amendment rights to procedural due process, substantive due process,

family integrity, and parental autonomy, and further constitutes a violation of the Equal Protection Clause through racially disparate treatment and the racially biased presumption of danger and criminality applied to Plaintiff as a Black father, causing ongoing and irreparable constitutional injury.

## II. PARTIES

**32.** Plaintiff **Aundrae Akeem Allison** is an individual and the biological father of two minor children. Plaintiff possesses a fundamental liberty interest in the care, custody, companionship, and upbringing of his children, protected by the Fourteenth Amendment to the United States Constitution.

**33.** Defendant **City of Eagan, Minnesota** is a municipal corporation organized under the laws of the State of Minnesota and is responsible for the policies, customs, training, supervision, and discipline of the Eagan Police Department and its officers.

**34.** Defendant **Eagan Police Department** is the municipal law-enforcement agency of the City of Eagan and, at all relevant times, acted under color of state law.

**35.** Defendant **Officer Aaron Machtemist** is a sworn police officer employed by the City of Eagan. He is sued in both his individual and official capacities.

**36.** Defendant **Detective Lisa Fancher** is a sworn police detective employed by the City of Eagan. She is sued in both her individual and official capacities.

**37.** Defendant **Detective Mark Kritzeck** is a sworn police detective employed by the City of Eagan. He is sued in both his individual and official capacities.

**38.** Defendants **Kailee Elizabeth Allison, Stephanie Olson, Molly Peters, Vivian Peters, and John Peters** are private actors who knowingly and willfully participated in false reporting, escalation of allegations, logistical coordination, and joint activity with state actors to misuse judicial and law-enforcement processes, thereby acting in concert with state officials for purposes of liability under 42 U.S.C. § 1983.

**39. John Does 1–10** include unknown officers, supervisors, prosecutors' agents, records custodians, NCIC or database liaisons, and other persons acting under color of state law whose identities will be revealed through discovery.

## III. JURISDICTION AND VENUE

**40.** This Court has subject-matter jurisdiction pursuant to **28 U.S.C. §§ 1331 and 1343**, as this action arises under the Constitution and laws of the United States, including **42 U.S.C. § 1983**.

**41.** This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to **28 U.S.C. § 1367**.

**42.** Venue is proper in this District under **28 U.S.C. § 1391(b)** because substantial acts and omissions occurred within this District, including false reporting, misuse of law-enforcement databases, unlawful enforcement actions, maintenance of a nationwide warrant, and refusal to correct known legal defects after jurisdictional vacatur.

## IV. CONSTITUTIONAL FRAMEWORK, VOID ACTS, AND ACTION UNDER COLOR OF LAW

**43.** Parents possess a fundamental liberty interest in the care, custody, and control of their children, protected by the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57 (2000); *Stanley v. Illinois*, 405 U.S. 645 (1972).

**44.** Any government action taken without constitutional or statutory authority is **void ab initio** and legally powerless from its inception.

**45.** A warrant derives its force solely from the existence of (a) subject-matter jurisdiction and (b) a lawful predicate order at the moment of issuance and execution.

**46.** Enforcement of a void or vacated order constitutes an ongoing violation of the Fourth and Fourteenth Amendments, actionable under **42 U.S.C. § 1983**, regardless of whether the enforcing officer claims reliance on facial validity.

## V. FACTUAL ALLEGATIONS

**47.** Plaintiff realleges and incorporates by reference **1–46** as if fully set forth herein.

### A. Forum Shopping and Custodial Interference

**48.** Defendants facilitated the unilateral relocation of the minor children and engaged in deliberate and strategic forum shopping designed to manufacture jurisdiction, bypass lawful custody adjudication, and obstruct Plaintiff's parental contact, despite Plaintiff being a fit parent and despite the absence of any valid custody order authorizing removal.

## B. Welfare-Check Narrative, Racialized Characterization, and Defamation

**49.** Defendants repeatedly portrayed Plaintiff—a Black father of interracial children—as "dangerous," violent, or criminal to law enforcement, courts, and third parties, relying almost exclusively on the label and allegations of "domestic violence" asserted by Plaintiff's white spouse.

**50.** These portrayals persisted despite the fact that the accuser failed to appear in North Carolina proceedings and voluntarily dismissed the Minnesota proceedings, resulting in dismissals with prejudice and the absence of any judicial findings of wrongdoing.

**51.** State actors consistently elevated allegations while disregarding final judicial outcomes favorable to Plaintiff, selectively crediting accusations while ignoring dismissals, exculpatory facts, and jurisdictional rulings, reflecting racially disparate treatment of Plaintiff as presumptively dangerous, criminal, and unfit absent probable cause or lawful adjudication.

**52.** These false narratives were used to justify escalating law-enforcement involvement, surveillance, and criminalization, contributing directly to reputational harm, deprivation of parental rights, and unlawful seizure of Plaintiff's liberty.

## C. Undocumented Police Contacts, Racial Profiling, and Police Harassment

**53.** Defendant Officer Aaron Machtemist engaged in undocumented and off-record communications with Plaintiff, including repeated contacts implying enforcement authority, without any lawful predicate, warrant, or jurisdictionally valid court order, exceeding the scope of permissible police conduct in a civil custody matter.

**54.** These contacts occurred in the absence of criminal conduct and were based solely on civil allegations and personal complaints made by private actors, and the Eagan Police Department later acknowledged that it possessed no record of a purported nine-minute call involving Plaintiff, evidencing irregular, undocumented, and improper police practices.

**55.** After the November 26, 2025 voluntary dismissal with prejudice of all child-related claims in Minnesota—an act that conclusively terminated Minnesota's child-custody jurisdiction—Defendant Detective Lisa Fancher and the Eagan Police Department nevertheless initiated repeated late-night calls and messages to Plaintiff seeking to "get his side of the story."

**56.** These contacts constituted unwarranted surveillance, intimidation, and investigative harassment undertaken without probable cause, jurisdiction, or legitimate investigative purpose, and based solely on dismissed civil allegations.

**57.** The pattern of conduct—including repetitive targeting, undocumented contacts, implied enforcement authority, and continued investigation after dismissal—constitutes police harassment marked by arbitrary action, lack of lawful justification, and infringement of Plaintiff's Fourth and Fourteenth Amendment rights.

**58.** The manner in which Plaintiff was treated—subjected to surveillance, criminal suspicion, and intimidation despite dismissed cases and absence of probable cause—demonstrates racial profiling and disparate enforcement, whereby Plaintiff was treated as inherently dangerous based on race and accusation rather than evidence or law, in violation of the Equal Protection Clause.

### D. Dismissal With Prejudice of Minnesota Child Authority

**59.** On November 26, 2025, the Minnesota Order for Protection's child-related portion was dismissed with prejudice, terminating Minnesota's child-custody jurisdiction as a matter of law, and from that moment forward no Minnesota court possessed authority to issue custody, return, or enforcement orders concerning the minor children.

### E. Legal Impossibility of "Failure to Return"

**60.** At the time Plaintiff returned to North Carolina with the children, no enforceable custody order, return directive, or jurisdictionally valid mandate existed, rendering any allegation that Plaintiff "failed to return" the children legally impossible and unsupported by law or fact.

### F. False Emergency Filings and Concealment of Jurisdictional Defects

**61.** Emergency filings submitted in North Carolina falsely asserted that Minnesota possessed custody authority while intentionally concealing the dismissal with prejudice of the Minnesota child-related proceedings, misleading the court and law enforcement into believing lawful jurisdiction existed when it did not.

### G. Void December 1, 2025 Minnesota Custody Orders

**62.** On December 1, 2025, two Minnesota judges issued emergency custody orders granting Defendant Kailee Allison sole legal and physical custody, despite lacking personal and subject-matter jurisdiction at the time of issuance, and those orders were later vacated as void ab initio.

## H. Interstate Enforcement, Arrest, and Nationwide Warrant

**63.** On December 4, 2025, Plaintiff was arrested and charged based solely on the void Minnesota custody orders and derivative enforcement actions, constituting a false arrest and unlawful seizure lacking any valid legal predicate.

**64.** On that same date, Defendant Detective Mark Kritzeck prepared a probable-cause statement supporting a felony charge of deprivation of parental rights, knowingly predicated solely on dismissed domestic-violence cases in North Carolina and Minnesota, while omitting material exculpatory facts including dismissals, lack of jurisdiction, and absence of any custody adjudication.

**65.** A nationwide felony warrant remains active notwithstanding vacatur, dismissal, and clear notice to Defendants that the jurisdictional predicates underlying enforcement were invalid, and continued maintenance of the warrant constitutes an ongoing false imprisonment and unlawful restraint of liberty.

## I. Ongoing Harm and Continuing Constitutional Violations

**66.** As a direct and proximate result of Defendants' actions, Plaintiff and his children—who are interracial—have been forcibly separated for more than 110 days and counting, and Plaintiff has been denied all contact and knowledge of the children's whereabouts.

**67.** The continued enforcement actions reflect a broader pattern of discriminatory treatment whereby Plaintiff has been persistently treated as a criminal parent without evidence, adjudication, or jurisdiction, resulting in ongoing violations of procedural due process,

substantive due process, equal protection, freedom from unreasonable seizure, and the
fundamental right to family integrity.

## VI. QUALIFIED IMMUNITY DOES NOT APPLY

**68.** No reasonable officer could believe enforcement of a vacated, jurisdictionally void order was
lawful. *Livers v. Schenck*, 700 F.3d 340 (8th Cir. 2012).

**69.** The constitutional violations alleged herein were clearly established at the time of
Defendants' conduct, and Defendants' actions were objectively unreasonable under the
circumstances.

## VII. PROBABLE CAUSE FAILURE (GLOBAL)

**70.** Probable cause cannot exist where enforcement rests on void legal predicates, fabricated
jurisdiction, omitted exculpatory facts, and the criminalization of constitutionally protected
parental conduct.

## VIII. MONELL LIABILITY — CITY OF EAGAN

**71.** Plaintiff's injuries resulted from municipal policies, customs, and failures to train, supervise,
discipline, and correct unlawful enforcement practices, including continued reliance on void

custody orders and defective warrants, undocumented contacts, and continued investigative targeting after dismissal.

**72.** The City of Eagan's customs and practices were the moving force behind the constitutional violations alleged herein, including the continuation of unlawful enforcement and failure to correct known defects after notice and vacatur.

## IX. CAUSES OF ACTION

### COUNT I — 42 U.S.C. § 1983 (False Arrest / Unlawful Seizure)

73. Plaintiff incorporates paragraphs 1–72.

74. Defendants, acting under color of law, caused Plaintiff to be arrested and seized without probable cause and without a lawful predicate, based on void and vacated custody orders and derivative enforcement actions.

75. Plaintiff suffered loss of liberty, humiliation, emotional distress, and continuing harm as a result.

### COUNT II — 42 U.S.C. § 1983 (Due Process — Procedural and Substantive)

76. Plaintiff incorporates paragraphs 1–72.

77. Defendants deprived Plaintiff of notice and a meaningful opportunity to be heard before effecting a state-enforced deprivation of custody, liberty, and family association.

78. Defendants further violated substantive due process by interfering with Plaintiff's fundamental parental rights and family integrity absent lawful authority, jurisdiction, or adjudication.

## COUNT III — 42 U.S.C. § 1983 (Malicious Prosecution)

79. Plaintiff incorporates paragraphs 1–72.

80. Defendants caused criminal proceedings to be initiated and maintained against Plaintiff without probable cause, through materially false statements, omitted exculpatory facts, and reliance on void legal predicates.

81. Defendants acted with malice and/or reckless disregard for Plaintiff's constitutional rights, resulting in ongoing restraint of liberty through a nationwide warrant and continuing prosecution.

## COUNT IV — 42 U.S.C. § 1983 (Civil Conspiracy)

82. Plaintiff incorporates paragraphs 1–72.

83. Defendants reached an understanding and acted in concert to accomplish an unlawful objective: seizure of the children, criminalization of Plaintiff, and continuation of enforcement after jurisdictional defects and vacatur.

84. Defendants committed overt acts in furtherance of the conspiracy, causing the injuries alleged herein.

## COUNT V — 42 U.S.C. § 1983 (Abuse of Authority / Abuse of Process Under Color of Law)

85. Plaintiff incorporates paragraphs 1–72.

86. Defendants abused law-enforcement and legal-process mechanisms to accomplish a custody outcome and criminal restraints without jurisdiction, lawful predicate, or adjudication.

## COUNT VI — 42 U.S.C. § 1983 (Use of False or Stale Information / Omitted Exculpatory Facts)

87. Plaintiff incorporates paragraphs 1–72.

88. Defendants relied on dismissed civil allegations, stale narratives, and materially incomplete facts, while omitting known exculpatory information—including dismissals and lack of jurisdiction—to support enforcement, probable cause, and continued restraint.

### COUNT VII — 42 U.S.C. § 1983 (Deprivation of Parental Rights / Family Integrity)

89. Plaintiff incorporates paragraphs 1–72.

90. Defendants deprived Plaintiff of the fundamental right to custody, care, and companionship of his children without lawful authority, jurisdiction, or adjudication, and continue to perpetuate that deprivation through ongoing enforcement.

### COUNT VIII — Monell Liability (City of Eagan)

91. Plaintiff incorporates paragraphs 1–72.

92. The City of Eagan is liable because Plaintiff's injuries were caused by municipal customs, practices, and failures to train and supervise that were the moving force behind the constitutional violations.

### COUNT IX — Defamation (State Law)

93. Plaintiff incorporates paragraphs 1–72.

94. Defendants published false statements portraying Plaintiff as dangerous, violent, or criminal, causing reputational and economic harm.

### COUNT X — Intentional Infliction of Emotional Distress (State Law)

95. Plaintiff incorporates paragraphs 1–72.

96. Defendants engaged in extreme and outrageous conduct—using false narratives and state

power to criminalize Plaintiff and separate him from his children—intentionally or recklessly causing severe emotional distress.

## COUNT XI — 42 U.S.C. § 1983 (Continued Enforcement of a Void Warrant)

97. Plaintiff incorporates paragraphs 1–72.

98. Defendants knowingly maintain and enforce a nationwide felony warrant lacking any lawful predicate, including after vacatur and notice of jurisdictional invalidity.

99. Each day the warrant remains active constitutes a new and independent unconstitutional restraint and deprivation of liberty and parental rights.

## X. RULE 65 — TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

100. Plaintiff is likely to succeed on the merits because the criminal charge and nationwide warrant are predicated on void legal predicates, materially incomplete probable cause, and continued enforcement after vacatur and notice of jurisdictional invalidity.

101. Plaintiff will suffer irreparable harm absent immediate relief, including ongoing deprivation of family integrity, continuing restraint of liberty, and continuing exposure to arrest and incarceration.

102. The balance of equities favors Plaintiff because Defendants face no legitimate hardship in ceasing unlawful enforcement, while Plaintiff faces ongoing constitutional injury.

103. The public interest favors enforcement of constitutional limits, accurate warrants and databases, and preventing law enforcement from acting as custody adjudicators absent lawful authority.

104. Plaintiff therefore seeks a temporary restraining order and preliminary injunction ordering Defendants and all persons acting in concert with them to:

a. Immediately cease enforcement of the nationwide warrant and any related pickup, hold, or arrest requests premised on void custody predicates;

b. Correct and cause correction of all associated law-enforcement databases, communications, and notices, including any NCIC-related entries or interstate alerts based on void or vacated orders;

c. Provide written confirmation that all nationwide enforcement requests issued in reliance on jurisdictionally void orders have been withdrawn or recalled; and

d. Enjoin further investigatory harassment, surveillance, or enforcement contacts lacking probable cause and a lawful predicate.

## XI. DAMAGES

**(Quantified for Settlement or Jury Presentation — $50,000,000 Total Exposure)**

105. Plaintiff seeks compensatory and punitive damages for extraordinary, willful, and ongoing violations of fundamental constitutional rights, including prolonged loss of liberty, destruction of family integrity, reputational devastation, and continuing emotional trauma.

## A. Compensatory Damages

106. Plaintiff seeks compensatory damages in an amount to be proven at trial, including but not limited to:

• Wrongful arrest, armed seizure, and incarceration, including arrest by more than twenty officers, jail detention, and felony charge: **$2,500,000**

• Loss of liberty and freedom of movement, including nationwide warrant, threat of re-arrest, and inability to live freely: **$5,000,000**

• Emotional distress and psychological trauma to Plaintiff, including arrest, incarceration, prolonged separation from children, fear, humiliation, and stress: **$7,500,000**

• Loss of parental association and family integrity, including more than 112 days without children, missed holidays and birthday, and concealment of children's location: **$15,000,000**

• Reputational damage and economic harm, including criminalization, professional harm, loss of opportunities, and legal burden: **$5,000,000**

• Future damages, including ongoing trauma, impairment of the parent-child relationship, and continuing legal risk: **$5,000,000**

107. **Subtotal compensatory damages: $40,000,000**.

108. The loss of a parent-child relationship through state action without adjudication constitutes one of the most severe civil-rights injuries recognized under federal law and warrants substantial compensatory damages.

**B. Punitive Damages**

109. Punitive damages are warranted where defendants act with evil motive, intent, or reckless indifference to federally protected rights.

110. Defendants' conduct was willful, malicious, and egregious, including enforcing custody and criminal restraints without jurisdiction, continuing enforcement after vacatur, and maintaining a nationwide warrant after clear notice of constitutional invalidity.

111. Plaintiff seeks punitive damages in the amount of **$10,000,000**, or such greater amount as determined by the jury, sufficient to punish and deter similar misconduct.

**C. Total Damages Sought**

112. Total damages sought: **$50,000,000**.

## XII. PRAYER FOR RELIEF

113. Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

a. Declaratory relief declaring the challenged enforcement actions and continued prosecution unlawful and unconstitutional;

b. Temporary, preliminary, and permanent injunctive relief ordering cessation of enforcement and correction of all related databases and notices;

c. Compensatory damages in the amount of **$40,000,000**, or as proven at trial;

d. Punitive damages in the amount of **$10,000,000**, or as determined by the jury;

e. Costs and attorney's fees pursuant to 42 U.S.C. § 1988, as applicable; and

f. Such other and further relief as the Court deems just and proper.

## XIII. JURY DEMAND

114. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Aundrae Akeem Allison

Plaintiff, Pro Se

12110 Anne Blount Aly

Huntersville, NC 28078

Telephone: (704) 425-3740

Email: aundrae@aundraeallison.com

Date: January 12, 2026